**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **STUDENT DOE NO. 1,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO. 25-1962** |
| **KRISTI NOEM,** *et al.***,** | |
| **Defendants.** | |

### MEMORANDUM OPINION

**Rufe, J.**                                                                            **April 28, 2025**

Plaintiff Student Doe No. 1[1] brings claims under the Administrative Procedures Act ("APA") and the Fifth Amendment against the Secretary of the Department of Homeland Security ("DHS"), and the Acting Director of United States Immigration and Customs Enforcement ("ICE"), arguing that his rights were violated when DHS terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record without notice. Plaintiff moves for a Temporary Restraining Order ("TRO"), seeking to enjoin Defendants from terminating Plaintiff's F-1 student status records from SEVIS and retroactively restore Plaintiff's status, as well as prevent Defendants from "directly or indirectly enforcing, implementing, or otherwise taking any action imposing legal consequences as the result of the decision to terminate Plaintiff's SEVIS records. . . including . . . detention or initiation of removal proceedings."[2] For the reasons discussed below, Plaintiff's motion will be granted.

---

[1] Plaintiff filed a Motion for Leave to Proceed Using a Pseudonym, to Require Redaction of Identifying Information from Filings, and to Close All Hearings to the Public [Doc. No. 18], which the Court granted in part and denied in part for reasons stated on the record during a Temporary Restraining Order hearing held on April 24, 2025. *See* Order [Doc. No. 23]. The parties have confirmed that Defendants are aware of Doe's identity. Therefore, referring to Plaintiff as Doe in the hearings and in this Opinion will not prejudice Defendants.

[2] Pl.'s Am. Proposed Order ¶¶ 1-3 [Doc. No. 20].

# I.    BACKGROUND[3]

## A.    F-1 Visa Program and SEVIS Status

A foreign student may enter the United States on "nonimmigrant status"[4] to complete a course of study at an approved educational institution.[5] The Department of State will issue an F-1 visa allowing the student entry to the United States, and the student is permitted to remain in the United States until the completion of their program.[6] Even if an F-1 visa is revoked, a student is permitted to continue their studies, but upon finalization of their program, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy outside of the United States before returning to the United States.[7] Revocation of an F-1 visa may be grounds for deportability in a removal proceeding, but that may be contested in the removal hearing.[8] The immigration judge may dismiss terminate proceedings where a visa is revoked, so long as a student is able to remain in good standing.[9]

A nonimmigrant student's legal status is governed by the F-1 visa system, which is administered by ICE through its Student and Exchange Visitor Program ("SEVP").[10] SEVP regulations govern the termination of F-1 student status in SEVIS.[11] Termination of SEVIS status can only be done in one of two ways: (1) if a student fails to maintain status, or (2) through

---

[3] For purposes of the TRO, the Court assumes all facts pled in the Complaint and in the Motion for TRO as true.

[4] "Nonimmigrant status" refers to a type of temporary visa status.

[5] 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f).

[6] Compl. ¶ 13 [Doc. No. 1].

[7] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf [https://perma.cc/J4P9-2ZD2].

[8] 8 U.S.C. § 1201(i).

[9] 8 C.F.R. § 1003.18(d)(1)(ii)(B).

[10] *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, F.3d 172, 175 (3d. Cir. 2019).

[11] 8 C.F.R. § 214.2(f).

an agency-initiated termination of status. The first category, failure to maintain status, occurs

when a student voluntarily or inadvertently falls out of compliance with the F-1 visa

requirements.[12] 8 C.F.R. § 214.1(g) specifically states that "[a] nonimmigrant's conviction in a

jurisdiction in the United States for a crime of violence for which a sentence of more than one

year imprisonment may be imposed . . . constitutes a failure to maintain status under [the Act]."[13]

The second category, agency-initiated termination of status, may occur under three

circumstances: (1) a previously granted waiver under INA § 212(d)(3) or (4) is revoked; (2) a

private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes

a notification in the Federal Register identifying national security, diplomatic, or public safety

reasons for termination.[14] Otherwise, DHS cannot unilaterally terminate nonimmigrant status.[15]

A student who has not violated their F-1 status, even if the visa is revoked, cannot have a

SEVIS record terminated based on revocation of visa alone: the student is permitted to pursue

their course of study, but upon departure from the United States, the SEVIS record is terminated

and the student must obtain a new visa prior to returning to the United States.[16] Revocation of a

visa may be a basis for deportability in removal hearings, but this may be contested and SEVIS

status is still not revoked until an immigration judge enters a final removal order.[17]

---

[12] 8 C.F.R. § 214.2(f). 8 C.F.R. §§ 214.1(e)-(g) enumerates three specific circumstances under which certain conduct "constitutes a failure to maintain status": engaging in unauthorized employment; providing false information to DHS; and being convicted of a crime of violence with a potential sentence of more than a year.

[13] 8 C.F.R. § 214.1(g).

[14] 8 C.F.R. § 214.1(d).

[15] *Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019).

[16] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf [https://perma.cc/J4P9-2ZD2].

[17] 8 U.S.C. § 1227(a)(1)(B); 8 U.S.C. § 1201(i).

B.    **Factual Background**

Plaintiff Doe is a masters student at Temple University in Philadelphia, Pennsylvania.[18] Plaintiff is enrolled full-time.[19] In May of 2024, Temple University issued Plaintiff Form I-20, a "Certificate of Eligibility for Nonimmigrant Student Status," which would permit Plaintiff to enter the United States as an F-1 visa student in order to begin his program.[20] Plaintiff's program is two years, or four semesters in length. Plaintiff completed the first semester and is "less than four weeks" from completing the second semester which would allow him to obtain 24 out of the required 48 credits for his academic program.[21] Following completion of his second semester, Plaintiff must participate in "Curricular Practical Training," which is a type of employment authorization that F-1 students are eligible to complete, and is a curriculum requirement for students in Plaintiff's Master's program.

On April 10, 2025, Temple University notified Plaintiff that Plaintiff's record within SEVIS, which is maintained by ICE, was terminated by DHS.[22] The termination occurred without notice to Plaintiff or to Temple University.[23] Plaintiff alleges that this termination occurred at least in part because of a criminal matter filed against Plaintiff.[24] Temple University has not initiated any disciplinary action against Plaintiff.[25] Plaintiff asserts that as of April 10,

---

[18] Mem. Law Supp. Pl.'s Mot. TRO at 1 [Doc. No. 8-2].

[19] Compl. ¶ 21 [Doc. No. 1].

[20] *Id.* ¶ 24. Plaintiff asserts that "at all times relevant to this action" Plaintiff has been a "bona fide student" and pursued a "full course of study," and Plaintiff was "pursuing a full course of study" at an approved educational institution. *Id.* at ¶ 25.

[21] *Id*. ¶ 26.

[22] *Id.* ¶¶ 28-29.

[23] *Id*. ¶ 28.

[24] Mem. Law Supp. Pl.'s Mot. TRO at 2 [Doc. No. 8-2].

[25] *Id.*

2025, Plaintiff was a student in good standing and was fully compliant with his F-1 student status.[26]

### C.    Procedural Background

Plaintiff initiated this action before the Court, challenging the termination of his SEVIS record "as unlawful in violation of his Fifth Amendment right to due process,"[27] and filed a motion for a temporary restraining order ("Motion for TRO"). The Court held a hearing on April 22, 2025.[28] At the April 22, 2025 hearing, the parties represented to the Court that they were close to negotiating a stipulation and therefore would not need to go forward with argument on the Motion for TRO. The proposed stipulation was read into the record and contained, in part, the agreement that Defendants would not deport or detain Plaintiff. The Court was later notified that Defendants refused to sign the stipulation and therefore the Motion for TRO would not be withdrawn.

The Court ordered the parties to return to show good cause as to why the stipulation approved by the Court on the record should be vacated as well as to hear testimony, evidence, and argument on the Motion for TRO.[29] The Court held a second hearing on April 24, 2025.[30]

## II.    LEGAL STANDARD

When considering whether to grant a motion for a temporary restraining order, courts must consider three factors under Federal Rule of Civil Procedure 65: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the movant in the absence of relief; (3)

---

[26] *Id.*

[27] *Id.*

[28] Minute Entry [Doc. No. 17].

[29] Show Cause Order [Doc. No. 15].

[30] Minute Entry [Doc. No. 24].

balance of the harms between the plaintiff on the one hand and the defendants on the other; and (4) the public interest.[31] Should the government be the opposing party, the third and fourth factors are considered together.[32] TROs "typically remain in effect for a maximum of 28 days, and cannot extend indefinitely."[33] Generally, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."[34] An order granting relief that alters the status quo exceeds the temporary and limited nature of a temporary restraining order.[35]

The issues of likelihood of success on the merits and irreparable harm are considered first, as they are the "most critical."[36] If the movant satisfies its burden on these factors, the court considers whether "the balance of equities tips in the movant's favor" and whether "an injunction is in the public interest."[37] The court then assesses "whether the balance of all four factors warrants granting preliminary relief."[38]

## III.    JURISDICTION

"Agency action made reviewable by statue and final agency action for which there is no other adequate remedy in a court are subject to judicial review."[39] There is no statute authorizing judicial review over the termination of a SEVIS record. As such, in order to have jurisdiction, the

---

[31] *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 178 (3d Cir. 2018).

[32] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[33] *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 n.5 (3d Cir. 2019) (internal quotation marks and citations omitted).

[34] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[35] *Hope v. Warden*, 956 F.3d 156, 161–62 (3d Cir. 2020).

[36] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (quoting *Nken*, 556 U.S. at 434).

[37] *Winter*, 555 U.S. at 20.

[38] *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021).

[39] 5 U.S.C. § 704.

Court must determine whether the termination of Plaintiff's SEVIS record was a final agency action for which there is no other adequate remedy. Final agency action is the "consummation of the agency's decision-making process" where "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."[40] The termination order ending a student's legal status in the United States is "clearly" one that determines a right or obligation.[41] As such, the only question is whether the agency action here is a "final" one.

Finality under the APA requires "exhaustion of administrative remedies."[42] Where there are no further procedures that a party could invoke to have their claim heard, or no further opportunity to challenge the legality of the agency decision, exhaustion of administrative remedies is no longer a requirement of finality.[43] "[R]emoval proceedings are not a prerequisite to finality when there is no guarantee that such a proceeding will ever occur."[44]

Here, Plaintiff's SEVIS status was terminated, which is clearly a determination of Plaintiff's rights and obligations—his ability to legally stay in the United States. It also appears to this Court that the termination of Plaintiff's SEVIS record is the consummation of the agency's decision-making process. There is no statutory requirement that a student seek reinstatement of student status in SEVIS, and even if there were, there is no "mechanism to review the propriety" of the original termination.[45] Even if there were removal proceedings,

---

[40] *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted).

[41] *Fang*, 935 F.3d at 180.

[42] *Pinho v. Gonzales*, 432 F.3d 193, 200 (3d Cir. 2005).

[43] *Fang*, 935 F.3d at 181.

[44] *Id.*

[45] *Id.* at 182; *see also* 8 C.F.R. § 214.2(f)(16)(ii) (noting that if USCIS does not reinstate SEVIS status the student may not appeal the decision).

which Defendants have not shown, such proceedings "cannot function as review mechanisms for reinstatement proceedings."[46]

Defendants, in their opposition, state that the Privacy Act provides Plaintiff relief here under the APA, by enumerating a method through which Plaintiff may correct the SEVIS record and citing a Fifth Circuit case that has applied the Privacy Act to preclude jurisdiction under the APA. However, Defendants have ignored Supreme Court and Third Circuit precedent establishing that correction of a record fails to provide relief as it does not establish a "mechanism to review the propriety" of the original termination.[47]

Thus, the termination of Plaintiff's SEVIS record was a unilateral determination with immediate legal consequences over which Plaintiff has no ability to seek administrative review.[48] This Court has jurisdiction to proceed at this time.

IV.    DISCUSSION

A.    Plaintiff is Likely to Succeed on the Merits

Plaintiff asserts two claims of violation of the APA and a Fifth Amendment Due Process claim against Defendants based on the unlawful termination of Plaintiff's SEVIS record.[49]

Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[50] Plaintiff has demonstrated a likelihood of success that the termination of Plaintiff's SEVIS record was not in accordance with law, and that it was arbitrary and capricious.

---

[46] *Id.* at 184.

[47] *Fang*, 935 F.3d at 182.

[48] *Bennett*, 520 U.S. at 177-78.

[49] Compl. ¶¶ 36, 41 [Doc. No. 1]. Because the Court finds that Plaintiff has established a likelihood of success on his APA claim, the Court does not reach his Fifth Amendment Due Process claim at this time.

[50] 5 U.S.C. § 706(2)(A).

8

1.    <u>Not In Accordance With Law</u>

It is not in accordance with law for an agency to fail to follow its own regulations and policies. When an agency promulgates a regulation protecting fundamental statutory or constitutional rights, the agency must comply with that regulation.[51] Termination of SEVIS records can only be done on one of the grounds outlined above. In order for a nonimmigrant visa holder to violate status, they must be *convicted* of a crime of violence with a potential sentence of more than a year.[52] An arrest without a conviction does not cause a visa holder to violate status. In the enumerated grounds laying out DHS's ability to unilaterally terminate a nonimmigrant's SEVIS status, there is no provision permitting revocation based on an arrest.[53] As such, the reasoning given for terminating Plaintiff's SEVIS record—Plaintiff's arrest—fails to meet the criteria enumerated under DHS's regulations explaining what criminal activity results in a violation of status.

From the limited record in this case, Plaintiff has shown that Defendants' unilateral termination of his SEVIS record was an unauthorized agency action under the agency rules and regulations and was inconsistent with agency regulations—therefore, the Defendants' action was not in accordance with law. Plaintiff is likely to succeed on this argument.

2.    <u>Arbitrary and Capricious</u>

Agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

---

[51] *Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180 (3d. Cir. 2010). *Johnson v. Ashcroft*, 286 F.3d 696, 705 (3d Cir. 2002) (explaining that it is an abuse of discretion for an agency to disregard its own policies).

[52] 8 C.F.R. § 214.1(g).

[53] *See generally* 8 C.F.R. § 214.1(d).

agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."[54] Plaintiff argues that "Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made."[55]

Here, Defendants have failed to suggest any rational grounds as to why its action is lawful under the APA.[56] Indeed, Defendants have obfuscated and obscured the reasons for the termination of Plaintiff's SEVIS record multiple times in these proceedings. The Temple University administrator for the SEVIS program testified that she accidentally discovered that the Plaintiff's SEVIS record was terminated, for which neither the University nor Plaintiff had been noticed or advised by Defendants. Defendants represented to this Court and on the record that they would be able to reach a resolution in this case on April 22, 2025, but later revoked the stipulation.[57] Plaintiff's SEVIS record was reinstated as "active" on April 24, 2025, at 3:25 P.M. ET, as a hearing before this Court proceeded and counsel and the parties were assembled before this Court, yet no one for Defendants offered to inform the Court at that time, nor the reasons therefore.[58] Defendants have not only failed to clearly articulate the reasoning behind their choices and the legality of their actions, they have engaged in truly questionable conduct on behalf of the defense. Accordingly, Plaintiff is likely to prevail on the claim that the agency action is arbitrary and capricious.[59]

---

[54] *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*").

[55] Mem. Law Supp. Pl.'s Mot. TRO at 7 [Doc. No. 8-2].

[56] *State Farm*, 463 U.S. at 50.

[57] *See* Order [Doc. No. 15].

[58] *See* Parties' Joint Submission Ex. A (Hicks Declaration) [Doc. No. 28-1].

[59] *State Farm*, 463 U.S. at 50.

**B.    Likelihood of Irreparable Harm in the Absence of Relief**

Plaintiff has articulated several theories of irreparable harm as a result of his SEVIS record. First, Defendants may initiate removal proceedings against Plaintiff, which may lead to deportation.[60] Second, Plaintiff may be arrested and detained pending the outcome of removal proceedings.[61] Third, Plaintiff cannot enroll in either his mandatory summer employment program or enroll in fall classes if his SEVIS record is inactive. Thus, Plaintiff's ability to complete his studies, and secure the employment that is conditioned on his completion of his degree, are at serious risk.[62] Fourth, Plaintiff asserts economic loss of the entire first year of tuition to his program.[63] Fifth, Plaintiff faces the accrual of time out-of-status and unlawful presence, both of which are critical factors for Plaintiff's future reinstatement of F-1 student status and future readmission.[64] Sixth, and finally, Plaintiff testified as to his fear of retribution in his home country should he be detained, deported, and forced to return without finishing his course of study.

The Court finds that these consequences of the termination of SEVIS status constitute irreparable harm to Plaintiff. The Court is not persuaded by Defendants' argument that should Plaintiff not complete his Master's program, he still has an engineering degree, as it fails to ameliorate the harms cited by Plaintiff.

---

[60] Mem. Law Supp. Pl.'s Mot. TRO at 7 [Doc. No. 8].

[61] *Id.* at 8.

[62] *Id.* at 9.

[63] *Id.*

[64] *Id.*

### C.    The Balance of Harms and the Public Interest

The balances of equities greatly favor granting a TRO. Plaintiff faces an ever-worsening series of decisions. In order to reapply for F-1 status and restore his SEVIS record, Plaintiff must leave the United States. But because Plaintiff is facing criminal charges, he cannot leave the United States. He also risks time out of compliance which may harm any future applications to return to the United States.

In contrast, Defendants have not shown any harm accruing by maintaining the reactivation of Plaintiff's SEVIS record pending the preliminary injunction hearing. Defendants argue that the public has a valid interest in the efficient functioning of the immigration system.[65] Defendants are correct: the public *does* have an interest in an efficiently functioning immigration system.[66] An agency action that arbitrarily canceled the SEVIS records of an otherwise compliant nonimmigrant student, failed to follow its own regulations, and continued to obfuscate the record to prevent Plaintiff from pursuing his rights is not an efficiently functioning immigration system. Plaintiff has shown that the balance of harms and public interest tip in Plaintiff's favor. The Motion for TRO will be granted.

## V.    REACTIVATION OF PLAINTIFF'S SEVIS ACCOUNT

The very same evening of the Court's second hearing on the TRO, Plaintiff's counsel informed the Court that Plaintiff's SEVIS record had been returned to "active status." Counsel later confirmed that Plaintiff received this notice at 6:17 P.M. ET on April 24, 2025,[67] and that Plaintiff's SEVIS record was returned to active status at 3:25 P.M. ET on April 24, 2025.[68] On

---

[65] Mem. Law Supp. Gov't Opp'n at 23 [Doc. No. 21].

[66] *Nken*, 556 U.S. at 435-36.

[67] Parties' Joint Submission [Doc. No. 28].

[68] Parties' Joint Submission Ex. A [Doc. No. 28-1].

April 25, 2025, the Court ordered and directed the parties to meet and confer and submit to this Court briefing as to how, if at all, the change to Plaintiff's SEVIS record should be considered by the Court with regard to the issuance or denial of the Motion for TRO.[69] In response, Defendants filed a one-page statement, maintaining that "this development has rendered both Plaintiff's motion for a temporary restraining order and this case moot because Plaintiff has now obtained the relief Plaintiff requested."[70] Plaintiff filed a 12-page brief, objecting to the incorporation of the reactivation of Plaintiff's SEVIS record into the hearing record for the Motion for TRO. Plaintiff asserts that Defendants' voluntary cessation is irrelevant "absent absolutely clear evidence that the challenged conduct cannot reasonably be expected to reoccur."[71] Plaintiff argues that "[t]he hearing record is silent on why Defendants unlawfully terminated Plaintiff's SEVIS account based solely on arrest," and that there is no evidence, statement, or promise that Defendants will refrain from similar conduct in the future.[72]

The burden of persuasion on "mootness" lies with the party making the claim.[73] To show that a case in "truly moot," Defendants must show that "no reasonable expectation remains that it will return to its old ways."[74]The hearing record is distinctly void of any information regarding why Defendants unlawfully and arbitrarily terminated Plaintiff's SEVIS record without notice to Plaintiff. In fact, when asked by the Court why the record was terminated, counsel for Defendants had no answer. Defendants have continuously refused to confirm for this Court that they would not arrest, detain, or deport Plaintiff. Nor have Defendants offered any coherent

---

[69] Order [Doc. No. 25].

[70] Gov't's Statement at 1-2 [Doc. No. 26] (citations omitted).

[71] Pls.' Brief at 1 [Doc. No. 27].

[72] *Id.* at 2-3.

[73] *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

[74] *FBI v. Fikre*, 601 U.S. 234, 241-42 (2024) (internal quotation marks omitted).

explanation as to why Plaintiff's SEVIS status was revoked in the first place. Defendants' continued obfuscation throughout the case creates a genuine risk that, in the absence of a TRO, Plaintiff's SEVIS status, even if it has been reinstated at this moment in time, could be arbitrarily revoked again. In fact, in an email sent to Chambers, counsel for Defendants notes that "ICE maintains the authority to terminate a SEVIS record for other reasons."[75] This statement, coupled with the Defendants' refusal to sign any joint declaration or submission in this can, indicates to the Court that Plaintiff will not be able to rely merely on the representation that his SEVIS status is active.

Plaintiffs have objected to the incorporation of the reactivation of Plaintiff's SEVIS status as active into the record.[76] The Court, finds for the reasons stated above that even if Plaintiff's SEVIS status is incorporated into the record, it does not change the nature of Plaintiff's injury as Plaintiff cannot rely on Defendants' representations. The Court thereby overrules Plaintiff's objection and incorporates ECF Nos. 26, 27, and 28 into the record for purposes of the Motion for TRO.

Defendants have had the opportunity to be heard several times—at two hearings on the Motion for TRO on April 22, 2025, and April 24, 2025, and in supplemental briefing required by the Court's Order.[77] Defendants have noted that they plan to file a motion to dismiss, stating that they intend to "address the reactivation issue." The Court will set a briefing schedule in advance of the preliminary injunction hearing and counsel may address the issue at that time. Any delay in the issuance of the TRO will prejudice Plaintiff.

---

[75] Pl.'s Brief Ex. B (Lindgren Email) [Doc. No. 27-2].

[76] *See generally* Pl.'s Brief [Doc. No. 27].

[77] Order [Doc. No. 25].

## VI.    CONCLUSION

For the reasons stated above, the Motion for TRO will be granted. Although the TRO will remain in place for slightly more than 28 days, this is because the Court finds good cause to maintain the TRO until after the preliminary hearing in Plaintiff's criminal matter so that the parties and the Court will have a more complete record for the preliminary injunction hearing. Moreover, as Plaintiff's SEVIS status has been reactivated, there can be no prejudice to Defendants in the maintenance of the status quo. The Court finds no need for a bond. Thus, the Temporary Restraining Order will stand until the preliminary injunction hearing. An order will be entered.