IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STUDENT DOE NO. 1, <br>    Plaintiff, <br>   v. <br> KRISTI NOEM, *et al.*, <br>    Defendants. | CIVIL ACTION NO. 25-1962 |

**MEMORANDUM OPINION**

Rufe, J.                                                 June 4, 2025

  Plaintiff Student Doe No. 1[1] brings claims under the Administrative Procedures Act ("APA") and the Fifth Amendment against the Secretary of the Department of Homeland Security ("DHS"), and the Acting Director of United States Immigration and Customs Enforcement ("ICE"), arguing that his rights were violated when DHS terminated Plaintiff's Student and Exchange Visitor Information System ("SEVIS") record without notice. On April 28, 2025, the Court granted Plaintiff's Motion for a Temporary Restraining Order.[2] Plaintiff now moves for a Preliminary Injunction, seeking to enjoin Defendants from terminating Plaintiff's F-1 student status records from SEVIS and to require Defendants to add a notation that the reactivation of Plaintiff's SEVIS record is retroactive to April 10. Plaintiffs also seek to enjoin

---

[1] Plaintiff filed Consolidated Motions for Leave to Continue Proceeding Using a Pseudonym and to Require Redaction of Identifying Information from Filings [Doc. No. 38], which the Court granted because Plaintiff has presented several reasons why he faces a reasonable fear of severe harm that would result from litigating without a pseudonym. *See* Order [Doc. No. 43]. Disclosure of Plaintiff's identity would be an invasion of privacy as well as subject Plaintiff to harassment and ostracization far outweighing the public's interest in Plaintiff's identity. *Id.* The parties have confirmed that Defendants are aware of Doe's identity, and have been provided with all unredacted documentation such as to not hinder their defense. Therefore, referring to Plaintiff as Doe in the hearings and in this Opinion will not prejudice Defendants.

[2] Order [Doc. No. 30].

Defendants from "detaining or seeking to deport Plaintiff while the preliminary injunction remains in effect."[3] For the reasons discussed below, Plaintiff's motion will be granted.

## I. BACKGROUND[4]

### A. F-1 Visa Program and SEVIS Status

A foreign student may enter the United States on "nonimmigrant status"[5] to complete a course of study at an approved educational institution.[6] An F-1 visa, once issued by the Department of State, allows the student to enter the United States and remain until the completion of their program.[7]

The F-1 visa system is administered by ICE through its Student and Exchange Visitor Program ("SEVP").[8] SEVP regulations govern the termination of F-1 student status in the Student and Exchange Visitor Information System ("SEVIS").[9] Termination of SEVIS status can only be done in one of two ways: (1) if a student fails to maintain status, or (2) through an agency-initiated termination of status. The first category, failure to maintain status, occurs when a student voluntarily or inadvertently falls out of compliance with the F-1 visa requirements.[10] 8 C.F.R. § 214.1(g) specifically states that "[a] nonimmigrant's conviction in a jurisdiction in the

---

[3] Mot. Preliminary Injunction at 1 [Doc. No. 42].

[4] For purposes of the Motion for Preliminary Injunction, the Court assumes all facts pled in the Complaint and in the Motion for Preliminary Injunction as true. The Court has previously detailed much of the history in this case, as outlined in the Opinion granting Plaintiff's Motion for a Temporary Restraining Order. Mem. Op. [Doc. No. 29].

[5] "Nonimmigrant status" refers to a type of temporary visa status.

[6] 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f).

[7] Compl. ¶ 13 [Doc. No. 1].

[8] *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 175 (3d. Cir. 2019).

[9] 8 C.F.R. § 214.2(f); *see also* ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf [https://perma.cc/J4P9-2ZD2].

[10] 8 C.F.R. § 214.2(f). 8 C.F.R. §§ 214.1(e)-(g) enumerates three specific circumstances under which certain conduct "constitutes a failure to maintain status": engaging in unauthorized employment; providing false information to DHS; and being convicted of a crime of violence with a potential sentence of more than one year imprisonment.

United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed . . . constitutes a failure to maintain status under [the Act]."[11]

The second category, agency-initiated termination of status, may occur under three circumstances: (1) a previously granted waiver under INA § 212(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) publication by DHS of a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.[12] Without one of those three enumerated circumstances, DHS may not unilaterally terminate nonimmigrant status—to do so otherwise would be outside of DHS's statutory authority.[13]

A student who has not violated their F-1 status, even if the visa is revoked, cannot have a SEVIS record terminated based on revocation of visa alone: the student is permitted to pursue their course of study, but upon departure from the United States, the SEVIS record is terminated and the student must obtain a new visa prior to returning to the United States.[14] Revocation of a visa may be a basis for deportability in removal hearings, but the revocation may be contested. SEVIS status may not be revoked until an immigration judge enters a final removal order.

### B. Factual Background

Plaintiff Doe is enrolled full-time as a master's student at Temple University in Philadelphia, Pennsylvania.[15] In May of 2024, Temple University issued Plaintiff Form I-20, a "Certificate of Eligibility for Nonimmigrant Student Status," permitting Plaintiff to enter the

---

[11] 8 C.F.R. § 214.1(g).

[12] 8 C.F.R. § 214.1(d).

[13] *Fang*, 935 F.3d at 185 n.100.

[14] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf [https://perma.cc/J4P9-2ZD2].

[15] Compl. ¶ 21 [Doc. No. 1]; Mem. Law Supp. Pl.'s Mot. TRO at 1 [Doc. No. 8-2].

United States as an F-1 visa student to begin his program.[16] Plaintiff's program consists of four semesters over the course of two years. Plaintiff's program also requires that between the second and third semesters, Plaintiff complete "Curricular Practical Training," a type of employment authorization for which F-1 students are eligible.

On April 10, 2025, Temple University notified Plaintiff that Plaintiff's record within SEVIS, which is maintained by ICE, was terminated by DHS.[17] The termination occurred without notice to Plaintiff or to Temple University.[18] Plaintiff alleges that this termination occurred at least in part because of a criminal matter filed against Plaintiff.[19] Temple University has not initiated any disciplinary action against Plaintiff.[20] Plaintiff asserts that as of April 10, 2025, he was a student in good standing and was fully compliant with his F-1 student status.[21]

### C.    Procedural Background

Plaintiff initiated this action challenging the termination of his SEVIS record "as unlawful in violation of his Fifth Amendment right to due process,"[22] and filed a motion for a temporary restraining order ("TRO"). After briefing by the parties, several hearings, and oral argument, the Court issued the TRO, finding that Plaintiff was likely to succeed on the merits and the balance of the factors weighed in Plaintiff's favor.[23]

---

[16] Compl. ¶ 24 [Doc. No. 1]. Plaintiff asserts that "at all times relevant to this action" Plaintiff has been a "bona fide student" and pursued a "full course of study," and Plaintiff was "pursuing a full course of study" at an approved educational institution. *Id.* at ¶ 25.

[17] *Id.* ¶¶ 28-29.

[18] *Id.* ¶ 28.

[19] *Id.* ¶¶ 27-28.

[20] *Id.* ¶ 27.

[21] *Id.* ¶¶ 29-30.

[22] Mem. Law. Supp. Pl.'s Mot. TRO at 2 [Doc. No. 8-2].

[23] Mem. Op. [Doc. No. 29]; Order [Doc. No. 30].

Plaintiff then filed a Motion for Preliminary Injunction. The Court held a hearing on May 29, 2025. The parties presented no additional evidence, and instead moved to incorporate all evidence previously admitted from the TRO briefing and proceedings. The parties also briefed the Court on a current nationwide injunction for "similarly situated individuals."[24]

## II.   LEGAL STANDARD

The factors to consider in whether to grant a motion for a temporary restraining order or a preliminary injunction under Federal Rule of Procedure 65 are the same: (1) likelihood of success on the merits; (2) likelihood of irreparable harm to the movant in the absence of relief; (3) balance of the harms between the plaintiff on the one hand and the defendants on the other; and (4) the public interest.[25] Should the government be the opposing party, the third and fourth factors are considered together.[26] While TROs are typically in effect for a short period of time (i.e., a maximum of 28 days unless good cause is shown to temporarily extend the TRO), a preliminary injunction is effective until a decision has been reached on the merits.[27]

The issues of likelihood of success on the merits and irreparable harm are considered first, as they are the "most critical."[28] If the movant satisfies its burden on these factors, the court considers whether "the balance of equities tips in [the movant's] favor" and whether "an injunction is in the public interest."[29] The court then assesses "whether the balance of all four factors warrants granting preliminary relief."[30]

---

[24] Hr'g Tr. at 4-5 [Doc. No. 49].

[25] *Osorio-Martinez v. Att'y Gen.*, 893 F.3d 153, 178 (3d Cir. 2018).

[26] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[27] Fed. R. Civ. P. 65(a); *Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 58 n.5 (3d Cir. 2019) (internal quotation marks and citations omitted).

[28] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (quoting *Nken*, 556 U.S. at 434).

[29] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

[30] *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 380 (3d Cir. 2021).

## III. DISCUSSION[31]

The Court held two hearings on the Motion for TRO. Evidence admitted through those hearings was incorporated into the record for the Preliminary Injunction. While the Defendants presented a singular new argument during the hearing, no additional evidence was adduced in opposition to the Plaintiff's Motion for Preliminary Injunction. The Court therefore incorporates the analysis in the Opinion granting the TRO as it fully applies to the Motion for Preliminary Injunction, and addresses the new arguments made by the parties.

In its Opinion granting the TRO, the Court found the following:

> Plaintiff asserts two claims of violation of the APA and a Fifth Amendment Due Process claim against Defendants based on the unlawful termination of Plaintiff's SEVIS record.
>
> Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Plaintiff has demonstrated a likelihood of success that the termination of Plaintiff's SEVIS record was not in accordance with law, and that it was arbitrary and capricious.
>
> It is not in accordance with law for an agency to fail to follow its own regulations and policies. When an agency promulgates a regulation protecting fundamental statutory or constitutional rights, the agency must comply with that regulation. Termination of SEVIS records can only be done on one of the grounds outlined above. In order for a nonimmigrant visa holder to violate status, they must be *convicted* of a crime of violence with a potential sentence of more than a year. An arrest without a conviction does not cause a visa holder to violate status. In the enumerated grounds laying out DHS's ability to unilaterally terminate a nonimmigrant's SEVIS status, there is no provision permitting revocation based on an arrest. As such, the reasoning given for terminating Plaintiff's SEVIS

---

[31] The Court has already discussed at length why jurisdiction is proper here. *See* Mem. Op. [Doc. No. 29]. "Agency action made reviewable by statue and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. The Court previously held that the termination of Plaintiff's SEVIS record was a final agency action determining a right or obligation. Mem. Op. at 6-8 [Doc. No. 29]. There is no statutory requirement that a student seek reinstatement of student status in SEVIS, and there is no mechanism under which a student might request review of the propriety of the original termination. *Id.* at 7. And removal proceedings "cannot function as review mechanisms for reinstatement proceedings" under Third Circuit precedent. *Fang*, 935 F.3d at 184. Thus, the termination of Plaintiff's SEVIS record was a unilateral determination with immediate legal consequences over which Plaintiff has no ability to seek administrative review, and the Court has jurisdiction to proceed.

record—Plaintiff's arrest—fails to meet the criteria enumerated under DHS's regulations explaining what criminal activity results in a violation of status.

From the limited record in this case, Plaintiff has shown that Defendants' unilateral termination of his SEVIS record was an unauthorized agency action under the agency rules and regulations and was inconsistent with agency regulations—therefore, the Defendants' action was not in accordance with law. Plaintiff is likely to succeed on this argument.

Agency action is arbitrary and capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Plaintiff argues that "Defendants failed to articulate the facts that formed a basis for their decision to terminate Plaintiff's SEVIS status in violation of the APA, let alone any rational connection between the facts found and the decision made." Here, Defendants have failed to suggest any rational grounds as to why its action is lawful under the APA. Indeed, Defendants have obfuscated and obscured the reasons for the termination of Plaintiff's SEVIS record multiple times in these proceedings. The Temple University administrator for the SEVIS program testified that she accidentally discovered that the Plaintiff's SEVIS record was terminated, for which neither the University nor Plaintiff had been noticed or advised by Defendants. Defendants represented to this Court and on the record that they would be able to reach a resolution in this case on April 22, 2025, but later revoked the stipulation. Plaintiff's SEVIS record was reinstated as "active" on April 24, 2025, at 3:25 P.M. ET, as a hearing before this Court proceeded and counsel and the parties were assembled before this Court, yet no one for Defendants offered to inform the Court at that time, nor the reasons therefore. Defendants have not only failed to clearly articulate the reasoning behind their choices and the legality of their actions, they have engaged in truly questionable conduct on behalf of the defense. Accordingly, Plaintiff is likely to prevail.

…

The balances of equities greatly favor granting a TRO. Plaintiff faces an ever-worsening series of decisions. In order to reapply for F-1 status and restore his SEVIS record, Plaintiff must leave the United States. But because Plaintiff is facing criminal charges, he cannot leave the United States. He also risks time out of compliance which may harm any future applications to return to the United States.

In contrast, Defendants have not shown any harm accruing by maintaining the reactivation of Plaintiff's SEVIS record pending the preliminary injunction hearing. Defendants argue that the public has a valid interest in the efficient functioning of the immigration system. Defendants are correct: the public *does* have an interest in an efficiently functioning immigration system. An agency action that arbitrarily canceled the SEVIS records of an otherwise compliant nonimmigrant student, failed to follow its own regulations, and continued to

obfuscate the record to prevent Plaintiff from pursuing his rights is not an efficiently functioning immigration system. Plaintiff has shown that the balance of harms and public interest tip in Plaintiff's favor. The Motion for TRO will be granted.[32]

### A.   Additional Arguments on Motion for Preliminary Injunction

At the hearing on the Motion for Preliminary Injunction, the parties raised additional arguments regarding the second factor in a TRO analysis: likelihood of irreparable harm to the movant in the absence of relief. Plaintiff has articulated several theories of irreparable harm as a result of loss or revocation of his SEVIS record. First, Defendants may choose to initiate removal proceedings against Plaintiff, which may lead to deportation.[33] Second, Plaintiff may be arrested and detained by ICE pending the outcome of removal proceedings.[34] Third, Plaintiff faces the loss of Plaintiff's academic studies and related consequences to his career trajectory.[35] Fourth, Plaintiff asserts economic loss of the tuition for his master's program as well as loss of future income from an employer who has offered him a position contingent on his completion of his program of study.[36] Fifth, Plaintiff faces the accrual of time out-of-status and unlawful presence, both of which are critical factors for Plaintiff's future reinstatement of F-1 student status and readmission to the United States.[37] Sixth, and finally, Plaintiff testified as to his fear of retribution in his home country should he be detained, deported, and forced to return without finishing his course of study.

---

[32] *See generally* Mem. Op. [Doc. No. 29] (citations omitted).

[33] Mem. Law Supp. Pl.'s Mot. Prelim. Inj. at 18 [Doc. No. 42].

[34] *Id.* at 18-19.

[35] *Id.* at 19.

[36] *Id.*

[37] *Id.* at 19-20.

Defendants argue that the Plaintiff's concerns do not warrant a preliminary injunction, and that Plaintiff has not established a likelihood of irreparable harm, arguing that "every asserted harm that Plaintiff invokes is based on hypothetical scenarios that flow from the termination of his SEVIS record—which has been returned to active status retroactive to its date of termination."[38] Defendants assert that because Plaintiff's SEVIS record was reactivated on April 24, 2025, and remains active today, any perceived harm from Plaintiff is "wholly speculative" and that "ICE has no plans under its new SEVIS policy to re-terminate [Plaintiff's] SEVIS record based solely on the [arrest] that led to its initial termination."[39] Defendants cite *City of Los Angeles v. Lyons*,[40] arguing that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects."[41] Plaintiff counters that the claims are not speculative and thus the case is not moot, distinguishing between a claim based on speculation that what occurred in the past is likely to happen again and a claim based on unlawful conduct that was occurring at the time the complaint was filed but has since been voluntarily ceased.[42] Plaintiff asserts that Defendants fail to acknowledge—let alone meet the standards to overcome—the voluntary cessation doctrine, which enables Plaintiff's claims to proceed.

The voluntary cessation doctrine requires that a defendant may not "automatically moot a case" by suspending the challenged conduct after it is sued.[43] Instead, "'voluntary cessation of a

---

[38] Defs.' Opp'n Pl.'s Mot. Prelim. Inj. at 4 [Doc. No. 45].

[39] *Id.* at 6 (quoting Decl. Andre Watson, Defs.' Opp'n Pl.'s Mot. Prelim Inj. Ex. A ¶ 6).

[40] 461 U.S. 95 (1983).

[41] *Id.* at 102 (cleaned up).

[42] Reply Mem. Supp. Pl.'s Mot. Prelim Inj. at 3-4 [Doc. No. 47] (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 184 (2000).

[43] *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

challenged practice' will moot a case only if the defendant can show that the practice cannot 'reasonably be expected to recur.'"[44] A defendant must prove that "no reasonable expectation remains that it will return to its old ways."[45] To do otherwise would allow a defendant to dodge jurisdiction in the federal courts, or to set into motion by their own illegal conduct a series of harms with no access to due process for vindication.[46] The longstanding premise in our democratic judicial system is that harms by the government, or by private parties, may be subject to review in a court of law—be that by administrative review or judicial review.

Defendants have abjectly failed to convince the Court that their conduct has ceased completely and is not reasonably expected to recur. During the Preliminary Injunction hearing, Counsel for Defendants were unable to articulate the basis for the reversal of the termination, and were unable to give the Court any assurances that Plaintiff's SEVIS status would not be, once again, affected by Defendants' arbitrary and capricious conduct.[47] Further, the declaration from Defendants only reflects what Defendants *intend* to do under a *current*, *temporary* policy, with no concrete information on which to rely. Defendants have stated several times throughout this litigation that the "policy" is undergoing revision and/or replacement, possibly on a national scale. This Court cannot decipher what the policy is, when it started, or whether it has been revised, changed, or replaced. This is antithetical to the rule of law, which requires a clear articulation of the law and notice to the public as a guide for all behavior. Defendants assert that should the policy change in a manner that necessitates the outcomes Plaintiff seeks to enjoin, like deportation or removal proceedings, Plaintiff can always file a renewed motion for preliminary

---

[44] *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (quoting *Friends of the Earth*, 528 U.S. at 189).

[45] *Id.* (cleaned up).

[46] *Id.*

[47] Hr'g Tr. at 21 [Doc No. 49].

injunction.[48] This toothless argument alone is sufficient to show that Plaintiff still faces the very real possibility of irreparable harm. The Court is satisfied that Plaintiff has proved the possibility of irreparable harm in the absence of relief.

Finally, the Court notes that Defendants have notified the Court as to the existence of a nationwide injunction, but Defendants have not taken a position as to how this injunction affects the case before the Court.[49] Given that the validity of such injunctions is currently under review by the Supreme Court of the United States, and Defendants take no position on this argument, the Court declines to find that the nationwide injunction supersedes the need for a preliminary injunction in this case. As Plaintiff has properly pled all relevant factors in the Motion for Preliminary Injunction, the motion will be granted.

## IV.   CONCLUSION

For the reasons stated above, the Motion for Preliminary Injunction will be granted. The Court finds no need for a bond. An order will be entered.

---

[48] *Id.* at 28 (explaining that Plaintiff could file a renewed motion for a preliminary injunction).
[49] Defs.' Notice Entry Nationwide Inj. [Doc. No. 46].